IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Sherry Cox, as Administrator of the Estate of Linda S. Beckman, | ) ) ) | |
| Plaintiff, | ) ) | Case No. C-1-01-643 |
| vs. | ) ) | |
| Metabolife International, Inc., | ) ) | |
| Defendant. | ) ) ) | |
| Barbara J. Bradley, et al., | ) ) ) | |
| Plaintiffs, | ) ) | Case No. C-1-02-809 |
| vs. | ) ) | |
| Metabolife International, Inc., | ) ) | |
| Defendant. | ) ) | |

Memorandum and Order

On September 23, 1999, Linda S. Beckman died after suffering a subarachnoid hemorrhage.  Her daughter, Sherry Cox, who is also the administrator of Ms. Beckman's estate, alleges that Ms. Beckman's death was caused by ingestion of the dietary supplement Metabolife 356, which is a product of Defendant Metabolife International, Inc.

On September 2, 1999, Plaintiff Barbara J. Bradley suffered a stroke shortly after ingesting Metabolife 356, which she had been taking for a few weeks.  Ms. Bradley and her husband, David W. Bradley, allege that Metabolife 356 caused her stroke.

Plaintiffs assert five claims against Defendant, all under Ohio law: strict liability, negligence, breach of express warranty, breach of implied warranty, and negligent misrepresentation/fraud.  This matter is before the Court upon Defendant's motions for summary judgment in both of the above-captioned actions (Doc. 90 in Case No. C-1-01-643; Doc. 108 in Case No. C-1-02-809).

I.  Background

Metabolife 356 (hereinafter, "Metabolife") is a dietary supplement containing ephedra and caffeine.  One of Plaintiff Cox's experts has opined that Metabolife "can cause stroke, seizure, heart attack and other cardiovascular adverse events in persons who consume recommended amounts."  Report of Steven Heymsfield.  Ephedra, as a general proposition, may raise blood pressure for a period of several hours following its ingestion.

A.  Linda S. Beckman

The parties agree that evidence in the record supports Plaintiff's Cox's allegation that Ms. Beckman purchased at least one partial bottle of Metabolife.  While Defendant contends that the record is devoid of evidence that tends to show that Ms. Beckman purchased more, the medical records related to Ms. Beckman's hospitalization in early September 1999 indicate that Ms. Beckman told hospital personnel that she was taking the product as of that date.

2

On September 5, 1999, Ms. Beckman attended a Labor Day party. She was awake until the early hours of September 6, 1999. Later that morning, her hosts discovered that Ms. Beckman was ill. Ms. Beckman was taken to a hospital, where it was determined that she had suffered a stroke and seizures.

While Ms. Beckman was in the hospital, her daughter Donna Freeman threw away pills that she believed to be the dietary supplement Ms. Beckman was taking at the time. The record does not include evidence that tends to show that Ms. Beckman continued to take Metabolife or any other dietary supplement after her hospitalization in early September 1999.

On September 23, 1999, Ms. Beckman suffered a massive cerebral bleed, which was later diagnosed as a subarachnoid hemorrhage. She died on that date. The parties agree that the hemorrhage resulted from the rupture of a berry aneurysm. The coroner concluded that the aneurysm had been a congenital condition. Plaintiff Cox initiated this action on September 21, 2001.

Defendant contends that it is entitled to summary judgment with respect to all of Ms. Cox's claims. First, it contends that the claims, which are based upon products liability, are barred by the applicable two-year statute of limitations, inasmuch as they arise from events that occurred in early September 1999 and Plaintiff Cox's initial complaint in this matter was not filed until September 21, 2001.

3

Defendant also contends that Plaintiff Cox has failed to identify admissible evidence of causation.  Defendant argues that the experts upon whose testimony Ms. Cox relies have grounded their opinions upon impermissible bases.  They further contend that none of the evidence of record supports the allegation that Ms. Beckman was taking Metabolife, as opposed to a copycat product, at the time of her stroke and seizures in early September 1999 or at the time of her death later that month.

With respect to specific subparts of Plaintiff Cox's strict liability claim, Defendant contends that it did not manufacture the product in question and that, accordingly, the evidence will not support a manufacturing defect claim. Defendant further contends that Ms. Beckman failed to follow the Metabolife package insert instructions in that she did not consult a physician before beginning to take the product.  On that basis, Defendant contends that Ms. Cox is precluded from establishing strict liability on the basis of defects in warnings and labeling.

Defendant contends that Plaintiff Cox is legally prohibited from asserting claims for breach of warranty because she has asserted strict liability claims.  It also contends that Plaintiff Cox's negligent misrepresentation/fraud claim fails for want of a representation as its basis.

    B.  Barbara J. Bradley

4

Prior to suffering a stroke on September 2, 1999, Plaintiff Barbara J. Bradley had a vertebral artery dissection. Ms. Bradley's stroke occurred, apparently, when the dissection reopened, permitting blood to escape to her brain. She had been taking Metabolife for approximately one month prior to suffering the stroke.

Ms. Bradley asserts the same claims as those asserted by Plaintiff Cox. Ms. Bradley's husband, David W. Bradley, also asserts a claim for loss of consortium.

Defendant moves for summary judgment with respect to all of the Bradleys' claims. In the case of Barbara Bradley, Defendant acknowledges that the evidence supports her allegation that she had been taking Defendant's Metabolife product during the period immediately preceding her stroke. Defendant contends, nevertheless, that the Bradleys' claims fail for want of evidence of causation. Defendant argues that the record is devoid of admissible evidence from which a trier of the facts could conclude that Metabolife caused Ms. Bradley's stroke. With respect to the other claims asserted by the Bradleys, Defendant raises the same arguments in favor of its motion for summary judgment as those that are raised with respect to the death of Linda S. Beckman.

II.  The Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file,

5

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom.  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654 (1962).  "The mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)(emphasis in original).

       The Court will not grant summary judgment unless it is clear that a trial is unnecessary.  The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  <u>Anderson</u>, 477 U.S. at 250.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  <u>Id.</u>

       The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment.  <u>Poller v. Columbia Broadcasting System, Inc.</u>, 368 U.S. 464, 472 (1962).  "[T]he issue of material fact required by Rule 56(c) . . . to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party

6

asserting its existence; rather, all that is required is that
sufficient evidence supporting the claimed factual dispute be
shown to require a jury or a judge to resolve the parties'
differing versions of the truth at trial." <u>First National Bank
v. Cities Service Co.</u>, 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with
extreme caution since it operates to deny a litigant his day in
court, <u>Smith v. Hudson</u>, 600 F.2d 60, 63 (6th Cir.), <u>cert.
dismissed</u>, 444 U.S. 986 (1979), the United States Supreme Court
has stated that the "[s]ummary judgment procedure is properly
regarded not as a disfavored procedural shortcut, but rather as
an integral part of the Federal Rules as a whole, which are
designed to 'secure the just, speedy and inexpensive
determination of every action.'" <u>Celotex Corp. v. Catrett</u>, 477
U.S. 317, 327 (1986). According to the Supreme Court, the
standard for granting summary judgment mirrors the standard for a
directed verdict, and thus summary judgment is appropriate if the
moving party establishes that there is insufficient evidence
favoring the non-moving party for a jury to return a verdict for
that party. <u>Id.</u> at 323; <u>Anderson</u>, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper
"against a party who fails to make a showing sufficient to
establish the existence of an element essential to the party's
case and on which that party will bear the burden of proof at
trial." <u>Celotex Corp.</u>, 477 U.S. at 322. Significantly, the
Supreme Court also instructs that the "the plain language of Rule

7

56(c) mandates the entry of summary judgment, after adequate time
for discovery and upon motion" against a party who fails to make
that showing with significantly probative evidence.  <u>Id.</u>;
<u>Anderson</u>, 477 U.S. at 250.  Rule 56(e) requires the non-moving
party to go beyond the pleadings and designate "specific facts
showing that there is a genuine issue for trial."  <u>Id.</u>

        Further, there is no express or implied requirement in
Rule 56 that the moving party support its motion with affidavits
or similar materials negating the opponent's claim.  <u>Id.</u>  Rule
56(a) and (b) provide that parties may move for summary judgment
"with or without supporting affidavits."  Accordingly, where the
non-moving party will bear the burden of proof at trial on a
dispositive issue, summary judgment may be appropriate based
solely on the pleadings, depositions, answers to interrogatories,
and admissions on file.

    III.  <u>Analysis</u>

        A.  The Statute of Limitations/Product Liability

        Defendant contends that Plaintiff Cox's claims are
barred by the statute of limitations applicable to product
liability claims under Ohio law, Ohio Revised Code ("O.R.C.")
§ 2305.10.  That statute provides that "[a]n action for bodily
injury . . . shall be brought within two years after the cause
thereof arose."  Defendant contends that Plaintiff Cox's causes
of action arose on September 6, 1999, when Linda Beckman suffered
a stroke and seizures, allegedly as a result of taking

8

Metabolife.  Because Plaintiff Cox did not first assert her claims against Defendant until September 21, 2001, Defendant contends, those claims are time-barred.

Evidence of record, in the form of Plaintiff Cox's deposition testimony, supports the proposition that Ms. Cox did not learn of the possible pharmacological cause of her mother's injuries and eventual death until after the death on September 23, 1999.  See Cox deposition, pp. 54-60.  Under Ohio law, a product liability claim based upon the ingestion of a drug or other substance does not accrue until the plaintiff discovers or, in the exercise of reasonable diligence, should have discovered, that the drug or substance may have caused or contributed to the injury or death.  See, e.g., Yacub v. Sandoz Pharmaceuticals Corp., 101 F.Supp.2d 852, 866 (S.D. Ohio 1998).  Defendant has not argued that Ms. Cox should have discovered that Metabolife contributed to or caused her mother's September 6, 1999 stroke and seizures prior to Ms. Beckman's September 23, 1999 death, nor has it argued that Ms. Cox failed to exercise reasonable or due diligence in ascertaining the possible cause of her mother's stroke, seizures, and subsequent death.  Accordingly, Defendant's motion for summary judgment with respect to Plaintiff Cox's claims on the ground that they are time-barred is not well-taken.

B.  Warranty Claims

Defendant argues that Plaintiffs' claims for breaches of express and implied warranties are effectively preempted by

9

their assertion of strict or statutory liability claims under the Ohio Revised Code. Plaintiffs argue to the contrary with respect to their claims for breach of implied warranty. They have not responded to Defendant's motions as they pertain to their claims for breach of express warranty, however.

Ohio's Products Liability Act, under which Plaintiffs assert their statutory claims, preempts common law claims for breach of express warranties. See White v. DePuy, Inc., 129 Ohio App.3d 472, 484 (Butler Cty. 1998). Accordingly, Defendant is entitled to summary judgment with respect to Plaintiffs' claims for breach of express warranty.

The Ohio "common law implied warranty tort claim continues to exist notwithstanding the O[hio] P[roducts] L[iability] A[ct]." Tompkin v. American Brands, 219 F.3d 566, 576 (6th Cir. 2000). Defendant has not urged a second basis for summary judgment with respect to Plaintiffs' implied warranty claims. The Court concludes, therefore, that Defendant is not entitled to summary judgment with respect to those claims.

C.  Negligent Misrepresentation/Fraud

Plaintiffs have asserted claims under Ohio common law for negligent misrepresentation and/or fraud. Defendants contend that those claims fail for failure to identify a representation upon which Plaintiffs relied to their detriment, as is required to prove a claim either of negligent misrepresentation or of

fraud.  See Delman v. Cleveland Heights, 41 Ohio St.3d 1, 4

(1989); Cohen v. Lamko, Inc., 10 Ohio St.3d 167, 169 (1984)[1].

In opposition to Defendant's motion, Plaintiffs argue

both that the same evidence that supports their claim for breach

of implied warranty supports a negligent misrepresentation claim

and that Defendant's failure to adequately inform consumers of

the risks associated with Metabolife constitutes fraud.  The

first argument fails because Plaintiffs have not identified a

representation that may be the basis for a negligent

misrepresentation claim.  In any event, Plaintiffs could not

maintain a negligent misrepresentation claim based upon false

representations about the safety of Metabolife because such

claims are preempted by the Ohio Products Liability Act.  See

Delahunt v. Cytodyne Technologies, Inc., 241 F.Supp.2d 827, 843-

44 (S.D. Ohio 2003)[2].  Because Defendant's arguments with respect

to Plaintiffs' fraud claims addressed only the failure to

identify a representation, Plaintiffs' fraud claims based upon

Defendant's omission of information about the risks associated

---

[1]But note that concealment of a fact where there is a duty
to disclose may substitute for a representation in establishing a
fraud claim.  See Cohen, 10 Ohio St.3d at 169.

[2]Plaintiffs' claims for negligence, asserted as the second
cause of action in the complaints in both of these cases and
unaddressed by Defendant in its memoranda in support of its
motions for summary judgment, may be subject to preemption on the
same basis if they are based upon actions or omissions by
Defendant that are specifically covered by the Ohio Products
Liability Act.  See Carrel v. Allied Products Corp., 78 Ohio
St.3d 284 (1997).

with the product survive Defendant's motions.  See Cohen, 10 Ohio
St.3d at 169.

D.  Strict or Statutory Liability

Plaintiffs assert claims of strict or statutory
liability under Ohio law.  Specifically, they assert that
Metabolife was defective in manufacture and design, as defined by
O.R.C. § 2307.74, in that, when it left the hands of the
manufacturer,

it deviated in a material way from the design
specifications, formula, or performance standards
of the manufacturer, or from otherwise identical
units manufactured to the same design
specifications, formula, or performance standards.

Plaintiffs also assert that Metabolife was defective in
design or formulation, as defined in O.R.C. § 2307.75, in that
when it left the hands of the manufacturer, "the foreseeable
risks associated with its design or formulation . . . exceeded
the benefits associated with that design or formulation" and it
was "more dangerous than an ordinary consumer would expect when
used as intended or in a reasonably foreseeable manner."
Finally, Plaintiffs assert that Metabolife is defective, as

defined in O.R.C. § 2307.76, due to inadequate warning and instruction at the time of marketing and post-marketing.

### 1. Manufacturing/construction defect claims

Defendant contends that Plaintiffs' claims under O.R.C. § 2307.74 fail as a matter of law because Defendant did not manufacture the Metabolife in question. Defendant contends that the fact that it did not manufacture the product is dispositive of the claim. It cites only the statute for that proposition. The statute is silent on that point, however. Defendant has not, accordingly, carried its burden of demonstrating that it is entitled to summary judgment on that basis.

Defendant also contends that Plaintiffs' claims under O.R.C. § 2307.74 fail, inasmuch as Plaintiffs cannot identify evidence that tends to show that the Metabolife they ingested deviated from Defendant's design specifications or product formulation. In opposition to Defendant's motions, Plaintiffs have not identified evidence of such deviation. Accordingly, the Court concludes that Defendant is entitled to summary judgment with respect to Plaintiffs' statutory claims to the extent that they are asserted pursuant to O.R.C. § 2307.74.

### 2. Inadequate warning claims

Defendant contends that Plaintiffs' statutory liability claims fail to the extent that they are based upon O.R.C. §2307.76, inasmuch as the unequivocal evidence demonstrates that neither Linda Beckman nor Barbara Bradley followed the instructions that were included with Metabolife.  In particular, Defendant observes that neither Ms. Beckman nor Ms. Bradley consulted a physician before beginning use of Metabolife for weight loss, even though the packaging materials advised them to do so.  See Barbara Bradley deposition, p. 90; Mehta deposition, pp. 25-26.  Ms. Bradley also failed to reduce her use of the product after experiencing nervousness and jitteriness, in spite of warnings included in the packaging materials.  See Barbara Bradley deposition, pp. 103-04.

Defendant's motion is not well-taken as regards either Barbara Bradley or Linda Beckman.  The use of a product contrary to a clear warning is a complete defense to a claim for inadequate warning.  See Dinsio v. Occidental Chemical Corp., 126 Ohio App.3d 292, 295 (Mahoning Cty. 1998)(citing Richards v. C. Schmidt Co., 54 Ohio App.3d 123 (Hamilton Cty. 1989)).  In order to establish the defense, the defendant must prove that the consumer read the warnings and understood them.  See Richards, 54 Ohio App.3d at 125.  Defendant has not identified evidence that tends to show that either Ms. Bradley or Ms. Beckman read the warnings to which Defendant refers in its memoranda in support of its motions for summary judgment.  Accordingly, it has not established that it is entitled to summary judgment with respect

14

to Plaintiffs' claims under O.R.C. § 2307.76 on the basis of the misuse defense.

E.  Causation

In addition to its arguments for summary judgment with respect to specific claims asserted by Plaintiffs, Defendant argues that it is entitled to summary judgment with respect to all of Plaintiffs' claims in light of their failure to introduce admissible evidence of causation.  In short, Defendant contends that Plaintiffs cannot prove that Metabolife did cause, or could have caused, their injuries.

1.  Barbara Bradley

Defendant's causation arguments with respect to the stroke suffered by Barbara Bradley are based upon a misapprehension of the theory underlying the Bradleys' claims. Ms. Bradley had a vertebral artery dissection prior to suffering a stroke on September 2, 1999.  Defendant's causation arguments in the Bradleys' case address the absence of evidence tending to show that the ingestion of Metabolife can result in an arterial dissection.  In their memorandum in opposition to Defendant's motion for summary judgment, the Bradleys have clarified that they do not allege that Metabolife caused the dissection but that it caused a spike in Ms. Bradley's blood pressure on September 2, 1999 and that that spike caused the dissection to reopen.  The

reopening of the dissection is the alleged cause of Ms. Bradley's
stroke.

      Defendant has not argued that the reopening of an
arterial dissection cannot cause a stroke.  Indeed, in its
memorandum in support of its motion for summary judgment with
respect to the Bradleys' claims, Defendant acknowledges that
dissections can result in strokes.  See Memorandum in support of
motion for summary judgment (Doc. 108, Case No. C-1-02-809), p.
2.

      Plaintiff Barbara Bradley has introduced evidence that
tends to show that Metabolife, as a product containing ephedra,
is capable of raising blood pressure, causing hemorrhagic strokes
from the reopening of arterial dissections.  Indeed, Ms.
Bradley's expert witness, Luis F. Pagani, M.D., has stated that
he holds the opinion, to a reasonable degree of medical
certainty, that Metabolife caused Ms. Bradley's stroke in that
fashion.  See Pagani affidavit, ¶ 5.  Ms. Bradley's treating
physician, Paul R. Schwetshenau, testified at deposition that
ephedra increases blood pressure.  See Schwetshenau deposition,
pp. 18, 44.

      Evidence introduced by Defendant is not to the contrary
and, in fact, lends support to the Bradleys' arguments.  Dr. Dean
Shanley, a witness for Defendant, has testified that a dissection
can lead to a stroke if it reopens.  See Shanley deposition, p.
21.  None of the evidence identified by Defendant contradicts the

16

Bradley Plaintiffs' contention that a spike in blood pressure can lead to the reopening of a dissection.

Defendant argues, generally, that evidence of causation is absent from the record. All of its arguments relate to causation of arterial dissections or hemorrhagic strokes, however, and not to causation of spikes in blood pressure. Plaintiffs have identified evidence in support of their contention that Metabolife, as an ephedra-containing product, can cause a spike in blood pressure, which, in turn, can cause the reopening of an arterial dissection, which, in turn, can cause a hemorrhagic stroke. Defendant has not argued that that evidence is inadmissible. Accordingly, its argument that it is entitled to summary judgment with respect to the Bradley Plaintiffs' claims because of the lack of evidence of causation is not well-taken.

### 2. Linda Beckman

With respect to the claims of Plaintiff Cox, Defendant contends that the record is devoid of admissible evidence that Metabolife did cause, or could have caused, Ms. Beckman's stroke, seizures, or death. Defendant first contends that Plaintiff Cox has not introduced evidence that tends to show that Ms. Beckman was taking Metabolife at the time of her stroke and seizures in early September 1999. Defendant's contention ignores Ms. Beckman's hospital records from early September 1999, however, which include a record of her stating that she was taking

17

Metabolife.  Defendant also contends that Plaintiff Cox cannot prove that Metabolife caused or could have caused her mother's death.

The parties are in apparent agreement that the immediate cause of Ms. Beckman's stroke and seizures on September 6, 1999, was a subdural hematoma.  Her death some 17 days later resulted from a subarachnoid hemorrhage due to a ruptured berry aneurysm.  The evidence of record establishes unequivocally that Ms. Beckman did not continue to take Metabolife after her first hospitalization, if she was taking it before.  Plaintiff Cox's theory of causation is that Metabolife caused the subdural hematoma and the berry aneurysm, which predisposed Ms. Beckman to the subarachnoid hemorrhage.  Defendant contends that Plaintiff Cox has failed to identify admissible evidence in support of her theory that Metabolife can cause a subdural hematoma, a berry aneurysm, or the rupture of a berry aneurysm.

In opposition to Defendant's motion with respect to causation, Plaintiff Cox has introduced, among other evidence, the affidavit of her expert witness, Daniel Woo.  Dr. Woo states as follows in his affidavit:

> 9)  It is well established that ephedra acts as a sympathomimetic agent.  Goodman and Gilman describe it as a drug that 'usually increases blood pressure' and 'increases peripheral resistance' and state that the 'untoward effects of ephedrine include the risk of hypertension'.

> 10)  Other sympathomimetic agents have been demonstrated in case-control studies to increase the risk of subarachnoid hemorrhage, including phenylpropanolamine, cocaine and amphetamine.

Hypertension has also been a consistently reported
risk factor for subarachnoid hemorrhage and is
described as a significant risk factor for
subarachnoid hemorrhage by the American Heart
Association, the American Academy of Neurology and
the American Academy of Neurological Surgeons.

* * *

12)  Weight loss has been consistently found to
lower blood pressure.  However, the Metabolife
studies by Boozer, et al. indicate that persons on
Metabolife experience increases in blood pressure
and/or heart rate while losing weight.  In my
opinion, Ms. Beckman's increased blood pressures
from her baseline, despite her decreasing weight
from baseline, indicate that Metabolife was a
pharmacologically active agent for Ms. Beckman,
causing her to lose weight while it also
contributed to an increase in blood pressure.  In
turn, hypertension is a known risk factor for
subarachnoid hemorrhage.

* * *

15)  Therefore, it is my expert medical opinion to
a reasonable degree of medical certainty that Ms.
Beckman's ephedra usage contributed to the rupture
of Ms. Beckman's aneurysm.  I further believe that
the subdural hematoma identified on August 24,
1999 and the extension of the subdural hematoma
identified on September 6, 1999 with associated
seizures, were likely sentinel hemorrhages.

16)  Subsequently, on September 23, 1999, Ms.
Beckman suffered a fatal hemorrhage from the
aneurysm.  The most likely cause of the rupture on
September 23, 1999, was that Ms. Beckman had the
prior sentinel hemorrhages.  It is my opinion to a
reasonable degree of medical certainty that the
final rupture of the aneurysm was the expected
outcome of an untreated aneurysm that had recently
leaked.  Thus, to a reasonable degree of medical
certainty, Ms. Beckman's use of Metabolife was a
substantial contributing factor to her death.

Defendant contends that, in order to establish general

causation, Plaintiff Cox must demonstrate that Linda Beckman's

ingestion of Metabolife was a substantial contributing factor in

19

her death.  See State Farm Fire & Casualty Co. v. Chrysler Corp.,
37 Ohio St.3d 1 (1987).  Defendant argued the absence of such
evidence before Plaintiff Cox submitted Dr. Woo's affidavit.  His
statements, particularly in paragraph 16, remedy the deficiency
upon which Defendant relies in support of its contention that
Plaintiff Cox cannot establish general causation.  Defendant has
not filed a reply memorandum and, thus, has not addressed Dr.
Woo's affidavit.

In its memorandum in support of its motion for summary
judgment, Defendant represents that Dr. Woo admitted at his
deposition that he could not say to a reasonable degree of
medical probability whether Metabolife caused Ms. Beckman's
stroke and that, accordingly, his opinion does not support
specific causation.  Defendant did not provide a citation to the
transcript of Dr. Woo's deposition in support of that
representation, however.  Accordingly, it is unsupported for
purposes of the present motion.[3]

---

[3]Defendant's lengthy recitation of the law applicable to the
admission of scientific evidence and to expert testimony does not
specifically relate to the opinion of Dr. Woo.  Rather, after
setting out the applicable standards, Defendant attacks two types
of evidence upon which, it "anticipates" Plaintiff Cox will rely:
adverse event reports and the "RAND report."  In his affidavit,
upon which Plaintiff Cox relies in opposition to Defendant's
motion for summary judgment, Dr. Woo does not make reference to
either the adverse event reports or the RAND report.
Accordingly, for present purposes, most of Defendant's argument
about the admissibility of that evidence or of expert testimony
based thereon is irrelevant.  While Defendant refers to the
report of Dr. Woo in its memorandum in support of its motion for
summary judgment, it has not attached that report as an exhibit.
Accordingly, the Court is unable to review its contents in order
to determine whether any portion of Dr. Woo's opinions as set
forth in his affidavit may be based upon adverse event reports or

IV.   <u>Causation</u>

For the reasons set forth fully herein, Defendant's motions for summary judgment (Doc. 90 in Case No. C-1-01-643; Doc. 108 in Case No. C-1-02-809) are hereby **GRANTED**, in part, and **DENIED**, in part.  Those motions are **GRANTED** with respect to Plaintiffs' claims for breach of express warranty and their statutory/strict liability claims to the extent that they are asserted under O.R.C. § 2307.74.  The motions are also **GRANTED** with respect to Plaintiffs' negligent misrepresentation/fraud claims except to the extent that Plaintiffs may pursue a claim of fraud based upon Defendant's alleged omission of information on the specific risks associated with the use of Metabolife.  The motions are **DENIED** in all other respects, and these actions will proceed to trial on Plaintiffs' claims of statutory/strict liability under O.R.C. §§ 2307.75 and 2307.76, negligence, breach of implied warranty, and fraud as set forth above.

**IT IS SO ORDERED.**

<u>s/Sandra S. Beckwith</u>
Sandra S. Beckwith
United States District Judge

the RAND report.  In short, Defendant's arguments about the admissibility of evidence are insufficiently supported to permit meaningful analysis at this stage of this litigation.